UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAROLETTE MEADOWS, on behalf of her
    MINOR CHILD, VM,
                              Plaintiff,

                                                      SECOND
                                      AMENDED COMPLAINT

    vs.
                                                       14-CV-762WMS

BUFFALO PUBLIC SCHOOLS, JAMES M.
SAMPSON, PATRICIA PIERCE, BARBARA
SEALS NEVERGOLD, LAWRENCE QUINN,
SHARON BELTON-COTTMAN, THERESA
HARRIS-TIGG, MARY RUTH MORROW-KAPSIAK,
JASON M. McCARTHY, and CARL P. PALADINO,
                                         Defendants

INTRODUCTION

1. This is a complaint for injunctive relief and damages brought pursuant to 42 USC §§ 1983 and 2000d of the Civil Rights Act of 1964.

2. Jurisdiction is conferred upon this Court by 28 USC § 1331.

3. Venue is properly laid in the Western District of New York pursuant to 28 USC § 1391(b) because all of the defendants reside in the Western District of New, and because the events giving rise to the Complaint occurred in the Western District of New York.

PARTIES

4. CAROLETTE MEADOWS ("CM") is the mother and legal guardian of VM, a minor child.

5. VM is a minor child, and the daughter of CAROLETTE MEADOWS; VM is African American.

6. Defendant BUFFALO PUBLIC SCHOOLS is an urban school system located within the City of Buffalo.

7. Defendant JAMES M. SAMPSON was, at all times relevant to this action, a member of the Buffalo Board of Education.  He is sued in his individual and official capacity.

8. Defendant PATRICIA PIERCE was, at all times relevant to this action, a member of the Buffalo Board of Education.  She is sued in her individual and official capacity.

9. Defendant BARBARA SEALS NEVERGOLD was, at all times relevant to this action, a member of the Buffalo Board of Education.  She is sued in her individual and official capacity.

10. Defendant LAWRENCE QUINN was, at all times relevant to this action, a member of the Buffalo Board of Education.  He is sued in his individual and official capacity.

11.  Defendant SHARON BELTON-COTTMAN was, at all times relevant to this action, a member of the Buffalo Board of Education.  She is sued in her individual and official capacity.

12. Defendant THERESA HARRIS-TIGG was, at all times relevant to this action, a member of the Buffalo Board of Education.  She is sued in her individual and official capacity.

13. Defendant MARY RUTH MORROW-KAPSIAK was, at all times relevant to this action, a member of the Buffalo Board of Education.  She is sued in her individual and official capacity.

14. Defendant JASON M. McCARTHY was, at all times relevant to this action, a member of the Buffalo Board of Education.  He is sued in his individual and official capacity.

15. Defendant CARL P. PALADINO was, at all times relevant to this action, a member of the Buffalo Board of Education.  He is sued in his individual and official capacity.

## FACTUAL ALLEGATIONS

16. Defendant BUFFALO PUBLIC SCHOOLS ("BPS") is a program receiving federal financial assistance within the meaning of 42 USC § 2000d, and a "person" within the meaning of 42 USC § 1983.

17. As members of the Board of Education of the Defendant BPS, Defendants SAMPSON, PIERCE, NEVERGOLD, QUINN, BELTON-COTTMAN, HARRIS-TIGG, MORROW-KAPSIAK, McCARTHY, and PALADINO were and are the policy-making body for the BUFFALO PUBLIC SCHOOLS at all times relevant to this Complaint.

18. In a report entitled "The State of New York's Failing Schools, 2015 Report" ("2015 Report") the State of New York identified twenty-seven schools operating within the Buffalo Public Schools as "failing schools," which it defined as "among the bottom five percent in the state in ELA and math performance or have graduation rates below 60 percent."

19. VM was born on May 9, 2003; at all times relevant herein, VM was enrolled in the Buffalo Public Schools, and resided within the school district served by the Defendant BPS.

20. At all relevant times, the Buffalo Public Schools offered enrollment based upon a "school choice" program, pursuant to which:
    a. parents were required to identify up to five preferred schools for their children;
    b. if there were insufficient seats to accommodate all of the applicants for a particular school, and the school was not a "criteria-based school," assignment to the school was by computerized lottery;
    c. if a student was not placed in any of their first choices either directly or via lottery, the Defendant BPS would assign the student to any available school.

21. VM started school at the Dr. George E. Blackman Early Childhood Center (School 54) in September 2007 as a preschooler.

22. In October 2007, CM had VM tested for the Gifted and Talented ("G-T") program at the Frederick Law Olmsted Elementary School ("Olmsted Elementary") within the Buffalo Public School System.

23. The G-T Program at the Olmsted Elementary School is a "criteria-based school."

24. At all relevant times, admission to the Olmsted Elementary G-T program at the Kindergarten and First Grade levels was based upon a parent inventory, a readiness assessment for math and reading, and an IQ assessment.

25. At all relevant times, admission to the Olmsted Elementary G-T program at the Second, Third, and Fourth-grade levels was based upon a parent inventory and a reasoning ability test.

26. VM was accepted into the Olmsted Elementary G-T program for the 2008-2009 school year.

27. Rather than place VM in Olmsted Elementary, CM opted to enroll VM in Tapestry Charter School within the Buffalo Public School District instead.

28. Tapestry Charter School is an "Expeditionary Learning" school with a mission statement describing a particular learning philosophy; it is not a criteria-based school.

29. VM attended Kindergarten and First Grade at Tapestry Charter School, from September 2008 through June 2010.

30. In Fall of 2009 CM had VM tested for the G-T program at Olmsted Elementary School at the second grade level.

31. VM was not accepted into the Olmsted Program.

32. Beginning in September 2010, CM home-schooled VM for Second Grade bearing the full cost of VM's education for that academic year.

33. CM also home-schooled VM for Third Grade, from September 2011 through June 2012 bearing the full cost of VM's education for that academic year.

34. In Fall of 2011, CM again had VM tested for admission to the Olmsted Elementary G-T program at the Fourth Grade level.

35. Also in Fall of 2011, CM had VM tested for Elmwood Franklin School (a private school serving Preschool through Eighth Grade, located in the City of Buffalo).

36. Admission to Elmwood Franklin School is based upon the Otis-Lennon School Ability Test, a cognitive-based test.

37. VM was not accepted to the Olmsted Program, but was accepted to Elmwood Franklin School, where she was offered a need-based scholarship.

38. VM attended Fourth Grade at Elmwood Franklin School, from September 2012 to June 2013.

39. In Fall of 2012, CM had VM tested for admission at both the Olmsted Middle and High School ("Olmsted Middle/High") G-T Program and City Honors School for the Fifth Grade.

40. At all relevant times, admission to the Olmsted Middle/High G-T Program at the Fifth Grade Level was based upon the following criteria:  Cognitive Ability Assessment, parent inventory, teacher checklist, Williams Scale assessment (a "creativity assessment"), New York State ("NYS") English Language Arts ("ELA") assessment, and NYS mathematics assessment.

41. At all relevant times, admission to City Honors School was based upon the following criteria: Cognitive Abilities assessment, NYS ELA assessment, NYS mathematics assessment, prior grades in ELA, math, science and social studies, teacher recommendation, and attendance.

42. VM was not accepted to the Olmsted Middle/High G-T program or to City Honors for the Fifth Grade.

43. VM attended Elmwood Franklin School for Fifth Grade from September 2013 to June 2014.

44. In 2013, CM had VM tested for admission to the Olmsted Middle/High G-T program and City Honors at the Sixth Grade level.

45. VM was not accepted to the Olmsted Middle/High G-T program or to City Honors for the Sixth Grade.

46. After VM was denied admission to the Olmsted Middle/High G-T program and City Honors, CM filed a Complaint with the United States Department of Education Office of Civil Rights (OCR Case No. 02-14-1245), asserting that the Buffalo Public Schools discriminated against VM on the basis of race by denying her admission into criteria-based schools Olmsted Elementary, Olmsted Middle/High, and City Honors

47. On April 7, 2014, the U.S. Dept. of Education notified CM that it would consider her allegations in conjunction with investigation of another complaint already under investigation by the Office of Civil Rights, OCR Case No. 02-14-1077.

48. Upon completing its investigation of OCR 02-14-1077, the Office of Civil Rights determined that the difference between the acceptance rates for black and white students for admission to the Olmsted Elementary G-T Program for the 2013-2014 academic year was statistically significant.

49. The Office of Civil Rights also determined that the difference between the acceptance rates for black and white students for admission to the Olmsted Middle/High G-T Program for the 2012-2013 academic year was statistically significant.

50. The Office of Civil Rights also determined that the difference between the acceptance rates for non-white and white students, and for black and white students at City Honors School for the 2013-2014 academic year was statistically significant.

51. On June 26, 2014, the Defendants voluntarily agreed to implement a Resolution Agreement in OCR Case No. 02-14-1077.

52. By letter dated July 2, 2014, CM was notified of the Office of Civil Rights' determinations, and of the Defendant BPS' voluntary agreement to implement a Resolution Agreement to resolve the complaint.

53. Pursuant to that Resolution Agreement, the Defendant BPS agreed *inter alia*,

    a. that by July 31, 2014, it would review the applications of VM and the other complainants' children to criteria-based schools for the 2013-2014 school year, and determine whether VM and the other complainants' children were treated the same as similarly situated applicants of other races in the admissions process;

    b. based upon the review described *above*, that it would consider whether VM and the other complainants' children should be admitted for the 2014-2015 school year to the criteria-based school to which they applied;

    c. if VM and the other complainants' children were not admitted to the criteria-based schools to which they had applied for school year 2014-2015, Defendant BPS would provide support services during the 2014-2015 school year designed to prepare VM and the other complainants' children to become successful applicants;

    d. it would re-examine whether VM and the other complainants' children could successfully enter the criteria-based school of their choice for the 2015-2016 school year under the newly revised admissions criteria for those schools.

54. Defendants also agreed to retain a consultant to examine the Defendant BPS' policies and programs, and to recommend measures Defendant BPS should take to provide all students with equal access and an equal opportunity to participate in the programs at criteria-based schools, and to other action items and reporting requirements that are set forth in detail in the Resolution Agreement.

55. Defendants did not review VM's applications for admission to either City Honors School or the Olmsted Middle/High Gifted and Talented Program for the 2014-2015 school year.

56. Instead of placing VM at either of her two choices (City Honors and Olmsted Middle/High G-T), Defendants offered VM no placement for the 2014-2015 school year.

57. CM made numerous contacts with representatives of the Buffalo Public Schools during the 2014-2015 school year in efforts to secure assignment to a public school that was not identified as a "failing school" in the 2015 Report.

58. CM home-schooled VM for part of the Sixth Grade, from September 2014 until March 2015, bearing the full cost of VM's education for those months.

59. In Spring of 2015, Defendants offered VM placement in Discovery School, a school within the Buffalo Public School System that is not a criteria-based school.

60. CM enrolled VM in Discovery School, beginning in March 2015.

61. In Spring of 2015, CM had VM tested by a private neuropsychologist at her own expense.

62. The neuropsychologist determined that VM (who was then in the Sixth Grade) was performing at a Fourth Grade level in mathematics, and also that she needed support in ELA.

63. VM requested that Defendants provide tutoring in mathematics and ELA for VM.

64. Defendants did not provide tutoring in mathematics and ELA or any other support services to VM during the 2014-2015 academic year.

65. Beginning in July 2015, VM received individual tutoring two days per week for two hours each day: one hour in math, and one hour in ELA.

66. In September 2015, the individual tutoring was reduced to one day per week, one hour of math and one hour of ELA.

67. Also in September 2015, in response to CM's request, VM was provided Academic Intervention Services ("AIS") in mathematics, pursuant to which VM was enrolled in an additional math period during each school day.

68. Defendant Buffalo Public Schools provided a tutor to VM from July 2015 until November 24, 2015.

69. On or about November 21, 2015, VM's tutor informed VM and CM that the tutor would no longer be able to provide tutoring services to VM.

70. As of the date of this Amended Complaint, the Defendants have not provided a replacement tutor for VM.

71. In the Fall of 2015, a representative of OCR informed CM that the Defendant BPS had informed OCR that it was providing supportive services to VM pursuant to the Resolution Agreement.

72. As is set forth *above*, the additional supportive services being provided to VM are being provided at CM's request to address specifically identified educational shortfalls, and are not support services designed to prepare VM to become a successful applicant to criteria-based schools.

73. All of the actions and failures to act of the Defendant BPS alleged herein were taken pursuant to the direction and under the control of Defendants SAMPSON, PIERCE, NEVERGOLD,

QUINN, BELTON-COTTMAN, HARRIS-TIGG, MORROW-KAPSIAK, McCARTHY, and PALADINO.

74. Defendants did not review VM's applications to criteria-based schools (Olmsted Middle/High G-T and City Honors) for the 2013-2014 school year.

75. Defendants did not determine whether VM was treated the same as similarly situated applicants of other races in the admissions process.

76. Defendants did not consider whether VM should be admitted for the 2014-2015 school year to the criteria-based schools to which she applied.

77. Defendants did not provide support services during the 2014-2015 school year designed to prepare VM to become a successful applicant to the criteria-based schools to which she applied.

78. Defendants failed to prepare VM to become a successful applicant for a criteria-based school of her choice within the Defendants' school district for the 2015-2016 school year.

79. Defendants did not revise the admissions criteria for its criteria-based schools despite having agreed to do so in the Resolution Agreement.

80. Defendants did not re-examine whether VM could successfully enter the criteria-based school of her choice for the 2015-2016 school year under newly revised admissions criteria for those schools because Defendants have not yet developed such criteria.

81. As recently as October 15, 2015, Defendants had also failed to comply with numerous aspects of the Resolution agreement that affect all students in the Buffalo Public Schools as is set forth in detail in a letter dated October 15, 2015, to Superintendent Kriner Cash from Timothy C. J. Blanchard, Director of the New York Office of the US Department of Education's Office for Civil Rights.

FIRST CAUSE OF ACTION:  DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF 42 USC § 2000d

82. Plaintiff reasserts and realleges the allegations contained in ¶¶ 1-81 as though fully set forth herein.

83. Defendants' actions and failure to act have excluded, and continue to exclude, VM from participation in educational programs at City Honors and the Olmsted Elementary and Olmsted Middle/High Gifted and Talented Programs, denying her the benefits of participation in those educational programs.

84. Defendants have discriminated, and continue to discriminate, against her on the grounds of her race, in violation of 42 USC § 2000d.

85. As a result of Defendants' illegal actions and failure to act, Plaintiff has suffered economic injury, loss of educational opportunity, and emotional distress.

86. Plaintiff will continue to suffer these irreparable injuries and monetary damages unless and until this Court grants relief.

SECOND CAUSE OF ACTION:  DENIAL OF EQUAL PROTECTION IN VIOLATION OF 42 USC § 1983

87. Plaintiff reasserts and realleges the allegations contained in ¶¶ 1-81 as though fully set forth herein.

88. Defendants' actions and failure to act have denied, and continue to deny Plaintiff equal protection of the law on the grounds of her race, in violation of 42 USC § 1983.

89. As a result of Defendants' illegal actions and failure to act, Plaintiff has suffered economic injury, loss of educational opportunity, and emotional distress.

90. Plaintiff will continue to suffer these irreparable injuries and monetary damages unless and until this Court grants relief.

THIRD CAUSE OF ACTION:  VIOLATION OF OCR RESOLUTION AGREEMENT

91. Plaintiff reasserts and realleges the allegations contained in ¶¶ 1-81 as though fully set forth herein.

92. As a Complainant in OCR Case No. 02-14-1245, which was incorporated by the Office of Civil Rights into OCR Case No. 02-14-1077, Plaintiff is an intended beneficiary of the Resolution Agreement between the Office of Civil Rights and Defendant BUFFALO PUBLIC SCHOOLS entered into by the Buffalo Public Schools on June 26, 2014.

93. Defendants' failure to review VM's applications for admission to either City Honors School or the Olmsted Middle/High Gifted and Talented Program for the 2013-2014 school year, to determine whether VM was treated the same as similarly situated applicants of other races in the admissions process, and to consider whether VM should be admitted for the 2014-2015 school year to either City Honors School or the Olmsted High Gifted and Talented Program violate the aforesaid Resolution Agreement.

94. Defendants' failure to provide any support services to VM during the 2014-2015 academic year violates the aforesaid Resolution Agreement.

95. Defendants' failure to revise the admissions criteria for their criteria based schools violates the Resolution Agreement.

96. Defendants' failure to prepare VM to become a successful applicant for a criteria-based school of her choice within the Defendants' school district for the 2015-2016 school year violates the Resolution Agreement.

97. As a result of Defendants' breaches of that Resolution Agreement, Plaintiff has suffered economic injury, loss of educational opportunity, and emotional distress.

98. Plaintiff will continue to suffer these irreparable injuries and monetary damages unless and until this Court grants relief.

**WHEREFORE,** Plaintiff respectfully requests this Court to enter an Order:

a. Enjoining Defendants from continuing to discriminate against VM on the basis of her race;

b. Enjoining Defendants from continuing to deny VM equal protection of the laws;

c. Directing Defendants to take such affirmative action as is necessary to ensure that the effects of unlawful practices described herein are eliminated, and do not continue to affect VM's educational situation and opportunities;

d. Awarding Plaintiff compensatory damages for the cost of her home schooling, the cost of her independent educational testing, for the violations of law set forth herein, for her loss of educational opportunity and for her pain and suffering;

e. Awarding Plaintiff punitive damages;

f. Awarding Plaintiff her attorney's fees and the costs of this action; and

g. Awarding Plaintiff such other and further relief as may be just and proper.

Dated:  January 25, 2016

/s/ Anna Marie Richmond
ANNA MARIE RICHMOND, Esq.
Attorney for Plaintiff
2500 Rand Building
14 Lafayette Square
Buffalo, NY  14203-1295
716-854-1100